IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA

CIVIL ACTION NO. 9981  - RICKEY DALE CONLEY, ET AL VS. LAKE CHARLES SCHOOL BOARD AND CALCASIEU PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 10687 - URA BERNARD LEMON, ET AL VS. THE BOSSIER PARISH SCHOOL BOARD, ET AL - UNITED STATES OF AMERICA, INTERVENOR

CIVIL ACTION NO. 10902 - MARCUS GORDON, ET AL VS. JEFFERSON DAVIS PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 10903 - ALFREDA TRAHAN, ET AL VS. LAFAYETTE PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 10912 - MARILYN MARIE MONTEILH, ET AL VS. ST. LANDRY PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 10946 - VIRGIE LEE VALLEY, ET AL VS. RAPIDES PARISH SCHOOL BOARD, ET AL - UNITED STATES OF AMERICA, INTERVENOR

CIVIL ACTION NO. 11053 - JOANN GRAHAM, ET AL VS. EVANGELINE PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11054 - JOHN ROBERTSON, ET AL VS. NATCHITOCHES PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11055 - BERYL N. JONES, ET AL VS. CADDO PARISH SCHOOL BOARD, ET AL - UNITED STATES OF AMERICA, INTERVENOR

CIVIL ACTION NO. 11125 - CATHERINE BATTISE, ET AL VS. ACADIA PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11126 - JAMES H. HENDERSON, JR., ET AL VS. IBERIA PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11130 - MARGARETT M. JOHNSON, ET AL VS. JACKSON PARISH SCHOOL BOARD, ET AL - UNITED STATES OF AMERICA, INTERVENOR

CIVIL ACTION NO. 11297 - JIMMY ANDREWS, ET AL VS. CITY OF MONROE, LOUISIANA, ET AL AND MONROE CITY SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11304 - YVORNIA DECAROL BANKS, ET AL VS. CLAIBORNE PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11314 - DOROTHY MARIE THOMAS, ET AL VS. ST. MARTIN PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11329 - LINDA WILLIAMS, ETC. VS. MADISON PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11351 - GWEN BOUDREAUX, ET AL VS. ST. MARY PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11501 - ELAINE A. GILBERT, ET AL VS. WEBSTER PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 11577 - IRMA J. SMITH, ET AL VS. CONCORDIA PARISH SCHOOL BOARD, ET AL - UNITED STATES OF AMERICA, INTERVENOR

CIVIL ACTION NO. 11908 - VIRA CELESTAIN, ET AL VS. VERMILLION PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12071 - UNITED STATES OF AMERICA, ETC. VS. LINCOLN PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12169 - UNITED STATES OF AMERICA, ETC. VS. RICHLAND PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12171 - JEREMIAH TAYLOR, ET AL VS. OUACHITA PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12177 - UNITED STATES OF AMERICA, ETC. VS. BIENVILLE PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12265 - UNITED STATES OF AMERICA VS. GRANT PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12589 - UNITED STATES OF AMERICA VS. DESOTO PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12721 - UNITED STATES OF AMERICA VS. AVOYELLES PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12722 - UNITED STATES OF AMERICA VS. EAST CARROLL PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12880 - BILLY GENE MOORE, ET AL VS. WINN PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 12924 - ERIC CLEVELAND, ET AL VS. UNION PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 14428 - UNITED STATES OF AMERICA VS. WEST CARROLL PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 14429 - UNITED STATES OF AMERICA VS. MOREHOUSE PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 14430 - UNITED STATES OF AMERICA VS. CATAHOULA PARISH SCHOOL BOARD, ET AL

CIVIL ACTION NO. 14516 - MITCHELL WILLIAM, ET AL VS. SABINE PARISH SCHOOL BOARD, ET AL

---

FOR PLAINTIFFS AND INTERVENORS

MESSRS.
Murphy W. Bell
214 E. Boulevard
Baton Rouge, Louisiana

Louis Berry
1406 Ninth Street
Alexandria, Louisiana

Alvin J. Bronstein
603 N. Farish Street
Jackson, Mississippi

Collins, Douglas & Elie
344 Camp Street, Suite 1110
New Orleans, Louisiana

Guillory, Guillory & Guillory
P. O. Box 151
Eunice, Louisiana

Donald Juneau
606 Common Street
New Orleans, Louisiana

John W. Mitchell
United States Dept. of Justice
Washington, D. C.

Jesse H. Queen
United States Dept. of Justice
Washington, D. C.

Robert P. Roberts
344 Camp Street, Suite 1110
New Orleans, Louisiana

Edward L. Shaheen
P. O. Box 33
Shreveport, Louisiana

James Sharp, Jr.
P. O. Box 271
Monroe, Louisiana

Donald Soileau
504 N. Sixth Street, Box 70
Mamou, Louisiana

Jesse N. Stone, Jr.
1116 Pierre Avenue
Shreveport, Louisiana

George M. Strickler, Jr.
606 Common Street
New Orleans, Louisiana

A. P. Tureaud
1821 Orleans Avenue
New Orleans, Louisiana

William B. Turner
10 Columbus Circle
New York, New York

Marion O. White
1520 N. Market Street
Opelousas, Louisiana

FOR DEFENDANTS

William H. Baker
P. O. Box E
Jonesboro, Louisiana

W. Sartis Bassett
Winnsboro
Louisiana

John B. Benton, Jr.
304 S. Broadway
Minden, Louisiana

J. Reuel Boone
Courthouse Building
Many, Louisiana

Burton, Roberts & Ward
206 Louisiana Avenue
Baton Rouge, Louisiana

Thompson L. Clarke
P. O. Box 108
St. Joseph, Louisiana

W. R. Coenen
Rayville
Louisiana

Bertrand DeBlanc
Lafayette
Louisiana

W. C. Falkenheiner
P. O. Box 308
Vidalia, Louisiana

Foley, Judell & Morel
225 Baronne Street
New Orleans, Louisiana

J. Y. Fontenot
P. O. Box 384
Opelousas, Louisiana

L. O. Fusilier
Ville Platte
Louisiana

Marvin F. Gahagan
Natchitoches
Louisiana

Robert U. Goodman
1002 Beck Building
Shreveport, Louisiana

Jack P. F. Gremillion
State Capitol Building
Baton Rouge, Louisiana

Hayes, Harkey & Smith
1504 Stubbs Avenue
Monroe, Louisiana

Hal R. Henderson
Arcadia
Louisiana

Fred L. Jackson
Homer
Louisiana

Harry J. Kron, Jr.
202 Audubon Street
Thibodaux, Louisiana

Albin P. Lassiter
Ouachita Parish Courthouse
Monroe, Louisiana

Ragan D. Madden
Ruston
Louisiana

Bernard N. Marcantel
P. O. Box 488
Jennings, Louisiana

Donald C. Martin
P. O. Box 233
Natchitoches, Louisiana

E. Rudolph McIntyre
Winnsboro
Louisiana

Louis H. Padgett, Jr.
Bossier Bank Building
Bossier City, Louisiana

Pipes and Pipes
316 S. Grand Street
Monroe, Louisiana

John A. Richardson
Caddo Parish Courthouse
Shreveport, Louisiana

Charles A. Riddle, Jr.
Marksville
Louisiana

Frank T. Salter
Calcasieu Parish Courthouse
Lake Charles, Louisiana

Thomas A. Self
Many
Louisiana

Kermit M. Simmons
P. O. Box 887
Winnfield, Louisiana

James T. Spencer
Farmerville
Louisiana

Knowles Tucker
P. O. Box 7
New Iberia, Louisiana

E. O. Ware, III
P. O. Box 1472
Alexandria, Louisiana

Sam Wells
Colfax
Louisiana

---

BEN C. DAWKINS, JR., CHIEF JUDGE
EDWIN F. HUNTER, JR., DISTRICT JUDGE
RICHARD J. PUTNAM, DISTRICT JUDGE

---

EN BANC:

On November 14, 1968, this court, sitting en banc, pursuant to the direction of the United States Court of Appeals for the Fifth Circuit in <u>Adams, et al v. Mathews, et al</u>, 1968, 403 F. 2d 181, received evidence and heard arguments to determine whether the freedom of choice plans for desegregation of the public school systems in twenty-nine parishes located in the Western District of Louisiana, were adequate to "convert the dual system to a unitary system in which racial discrimination would be eliminated root and branch." We concluded that freedom of choice, under the circuit-wide uniform decree required by <u>United States v. Jefferson County Board of Education</u> (5 Cir. 1966), 372 F. 2d 836, aff'd en banc, 5th. Cir. 1967, 380 F. 2d 385, cert. den., 1967, 389 U.S. 840, 88 S. Ct. 67, 19 L. Ed. 2d 103, was a permissible means to a constitutionally required end, "the complete abolition of segregation and its effects." <u>Conley v. Lake Charles School Board</u>, and related cases, reported at 293 F. Supp. 84. We said then and, with all deference to the Court of Appeals, we are impelled to repeat:

> "With every ounce of sincerity which we possess we think freedom of choice is the best plan available. We are not today going to jeopardize the success already achieved by casting aside something that is working and reach blindly into an experimental 'grab bag.'" 293 F. Supp. at p. 88.

During the course of many hearings in these cases, school officials have repeatedly asserted that any other plan would be disruptive of public education in many of the parishes before us. Some have said that chaos will result. This Court recognized the problems faced by these school boards.

Our judgment of November 14, 1968, has been reversed and we now have been mandatorily directed by the official decree of the Fifth Circuit Court of Appeals to enter an order requiring each School Board to formulate a new plan to bring about integration, effective September, 1969, a plan that "promises realistically to work now."

The decision of the Court of Appeals is self-executing. It directs that each School Board shall submit to this court a proposed new plan for its school system, effective with the commencement of the 1969-70 school term. It provides, however, that if the district court desires "to require a uniform type of plan, or a uniform approach to the formulation of plans, . ." it shall enter its order to that effect within ten days of the date of the mandate (May 28, 1969). After consultation, we agree that uniformity of approach is desirable and is in the best interest of public education in this District.

In Whitenberg, et al v. Greenville County School District, D.C. S.C., 1969, _____F. Supp._____, not yet reported, the district court of South Carolina, sitting en banc, referred the school districts of that state to the Department of Health, Education and Welfare, Office of Education, for assistance and approval in the formulation of new plans for desegregation required in the light of Green v. County School Board, 1968, 391 U.S. 430, 88 S. Ct. 1689, 20 L. Ed. 2d 716; Raney v. Board of Education, 1968, 391 U.S. 433, 88 S. Ct. 1697, 20 L. Ed. 2d 727; and Monroe v. Board of Commissioners, 1968, 391 U.S. 450, 88 S. Ct. 1700, 20 L. Ed. 2d 733. We agree with the reasons stated by the Judges of South Carolina in that case, and will require the School Boards now before us to take like action.

- 7 -

In formulating plans, the Boards and H.E.W. of necessity must consider the particular local problems of each school system. Only the Boards and H.E.W. have the expertise necessary to solve such problems effectively.* These law suits are all class actions for black citizens, in which only a few voices heretofore have been heard. Our concept of community participation in the control of education requires that the desires of all responsible elements of the local society, the black community and the white community, be determined and considered. In formulating new plans, defendant School Boards and H.E.W. should give utmost consideration to these desires. After all, it is the people of this state and nation whose interests and welfare must be served; it is to the people that state and federal officialdom owes its very existence, a fact too often forgotten.

In keeping with the Mandate of the Court of Appeals dated May 28, 1969, in United States, et al v. St. Helena Parish School Board, et al, and consolidated cases;

IT IS HEREBY ORDERED, that all defendant School Boards shall promptly submit to the Office of Education, H.E.W., their existing method of operation, along with the changes proposed by them under the order of this Court issued November 14, 1968, and shall within thirty days of the date of this Order, develop in conjunction with the experts of such office and submit to this Court, a new plan of operation for each school system subject hereto, to become effective with the commencement of the 1969-70 school year, insuring the operation of such system on a unitary, nondiscriminatory basis, conformable to the constitutional rights of the plaintiffs in these actions and meeting the standards required by Green, Raney and Monroe, supra, giving due consideration to the practical and administrative problems of each defendant Board. Such plan, if agreed upon by the defendant Board in question and H.E.W. will be approved by the Court, subject to the right of plaintiffs to file

objections or suggested amendments thereto within ten (10) days from the date such plan is filed.

If in any instance an agreed plan is not forthcoming, the defendant Board or Boards shall file its recommended plan; H.E.W. is requested to file its recommended plan for such defendant Board or Boards, and plaintiffs may also file a recommended plan, all within the thirty (30) day period dating from this Order, after which the court will, with or without a hearing as necessities may require, proceed to enter its decree.

In executing the foregoing Order, all parties are directed to proceed without delay in order that the new plans "shall be completed and approved by the district courts no later than July 25, 1969", as is required by the Mandate of the Court of Appeals.

Shreveport, Louisiana, nunc pro tunc June 5, 1969.

_____
CHIEF JUDGE

_____
DISTRICT JUDGE

_____
DISTRICT JUDGE

---

\* In support of this position, we must note the following views given by Honorable Warren E. Burger, then an active judge on the United States Court of Appeals for the District of Columbia Circuit, and now the nominee of President Nixon to be Chief Justice of the United States, in a dissenting opinion written by him as recently as January 21, 1969, in Smuck v. Hobson, 408 F.2d 175, at pages 196 and 197:

"BURGER, Circuit Judge (with whom Circuit Judge Tamm joins):

"We join in Judge DANAHER'S opinion and his view that sound principles of judicial restraint command that the

- 9 -

mandate be vacated assuming, <u>arguendo</u>, that a subject so complex and elusive, and so far beyond the competence of judges, would have warranted judicial action in the first instance.

"We add a brief comment to underscore what we believe is implicit in the principal opinion, and indeed in Judge DANAHER'S dissent. The holding of the District Court is not affirmed as written <u>but only as construed</u> by four members of this court. Even a cursory reading of the principal opinion reveals that as so construed, the mandate under review is essentially advisory to the former school board which has ceased to exist. As we see it the new school board is at liberty to make such use of it as it desires in much the same way as it may derive useful guidance from the Passow Report.

"Several commentators have expressed views which undergird what Judge DANAHER has said as to the need for caution and restraint by judges when they are asked to enter areas so far beyond judicial competence as the subject of how to run a public school system. We have little difficulty taking judicial notice of the reality that most if not all of the problems dealt with in the District Court findings and opinion are, and have long been, much debated among school administrators and educators. There is little agreement on these matters, and events often lead experts to conclude that views once held have lost their validity. The commentary from various sources, including law reviews, tends to supply strong support for Judge DANAHER'S very sound view on the need for judicial restraint. The Harvard Law Review comments:

> * * * [T]he limits upon what the judiciary can accomplish in an active role are an additional reason for circumspection, particularly in an area where the courts can offer no easy solutions.
>
> * * * A court applying the <u>Hobson</u> doctrine must necessarily resolve disputed issues of educational policy by determining whether integration by race or class is more desirable; whether compensatory programs should have priority over integration; whether equalization of physical facilities is an efficient means of allocating available resources for the purpose of achieving overall equal opportunity. There is a serious danger that judicial prestige will be committed to ineffective solutions, and that expectations raised by <u>Hobson</u>-like decisions will be disappointed. Furthermore, judicial intervention risks lending unnecessary rigidity to treatment of the social problems involved by foreclosing a more flexible, experimental approach.

The <u>Hobson</u> doctrine [<u>Hobson v. Hansen</u>, 269 F. Supp. 401 (1967), Honorable J. Skelly Wright, Circuit Judge, sitting as a District Judge] can be criticized for its unclear basis in precedent, its potentially enormous scope, and its imposition of responsibilities which may strain the resources and endanger the prestige of the judiciary . * * *

Hobson v. Hansen; <u>Judicial Supervision of the Color-Blind School Board</u>, 81 HARV.L.REV. 1511, 1527, 1525 (1968) (footnote omitted).

"The Stanford University Law Review had these comments:

It seems to have been the very magnitude of these problems that led the /District/ court to search for remedies. In a brief paragraph entitled "Parting Word" the court, anticipating the adverse reaction its substantially unprecedented intervention has indeed provoked, set forth its apologia in these terms:

It is regrettable, of course, that in deciding this case this court must act in an area so alien to its expertise. It would be far better indeed for these great social and political problems to be resolved in the political arena by other branches of government. But these are social and political problems which seem at times to defy such resolution. In such situations, under our system, the judiciary must bear a hand and accept its responsibility to assist in the solution where constitutional rights hang in the balance.

\* \* \* if at this time, however, such problems seem to "defy" social and political resolution, they are not for that reason more open to resolution by the courts. The responsibility lies first with those whose area of expertise comprehends feasible solutions.

Hobson v. Hansen: The De Facto Limits on Judicial Power, 20 STAN.L.REV. 1249, 1267 (1968)  (footnotes omitted).

"After enumerating a number of objections to the Constitutional underpinnings of a Hobson v. Hansen-type opinion, Professor Kurland of the University of Chicago goes on to state:

And my third point of difficulty with the suggested constitutional doctrine of equality of educational opportunity is that the Supreme Court is the wrong forum for providing a solution. \* \* \*

When we turn to the school desegregation cases, the problem most closely analogous to the one we are considering here, we find a more dismal picture of what must be acknowledged to be the Supreme Court's failure rather than its success. The <u>New York Times</u> in its annual educational survey for 1968, thirteen and one-half years after Brown v. Board of Education, suggests that we are hardly any further along the line toward school desegregation than we were in 1954.

The Washington, D. C., example is too much with us. And everything that Judge Skelly Wright can do

will not afford an integrated school system for the Nation's capital. <u>All that he can accomplish is to assure that the brighter students receive no better education within the system than the other students</u>. (Emphasis added.)

As I have suggested, it is perhaps because of the fact that local governmental units, especially those located in metropolitan areas, cannot or will not bring about racial desegregation that some are looking to the equal educational opportunity concept to break down the municipal boundaries in order to include suburban areas under the same umbrella as that which covers the slum schools. Absent a reversal of the Court's decision in Pierce v. Society of Sisters, however, the escape route of private education will not be closed. And a reversal of that decision will arouse the opposition not only of the suburbanites but of organized religions as well.

Kurland, Equal Educational Opportunity: The Limits of Constitutional Jurisprudence Undefined, 35 U.CHI.L. REV. 583, 592, 594, 595 (1968) (Footnotes omitted).

"<u>This court--and courts generally--would do well to heed these sobering observations.</u>" (Emphasis added.)