IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

**U. S. DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**F I L E D**

**JUL 0 7 1994**

ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

*******************************

CIVIL ACTION

NO. 14,430

UNITED STATES OF AMERICA

versus

CATAHOULA PARISH SCHOOL BOARD, ET AL

*****************************************************************

FOR PLAINTIFF:

FRANZ R. MARSHALL
United States Department of Justice
Educational Opportunities Litigation Section
Post Office Box 65958
Washington, D. C.  20035-5958

FOR DEFENDANT:

ROBERT L. HAMMONDS
Hammonds & Sills
Post Office Box 65236
Baton Rouge, LA  70896

FOR INTERVENOR:

JACK WRIGHT, JR.
1 Wood Street
Monroe, LA  71201

*****************************************************************

NAUMAN S. SCOTT

UNITED STATES DISTRICT JUDGE

*****************************************************************

# O P I N I O N

On February 1, 1994, the Catahoula Parish School Board (Board) passed a resolution to:

A.   Close Enterprise High School (K-12 - 92 students - 97% white) and reassign grades K-8 (64 students) to Harrisonburg Elementary (K-8 - 181 students - 87% white). This consolidation would increase the student population of Harrisonburg Elementary to 245 students - 90% white. Enterprise students (9-12 - 28 students and 97% white) would be reassigned to Harrisonburg High School (9-12 - 136 students - 92% white).   Students in grades 9-12 from the Manifest school area (currently 48 students) have been assigned to Harrisonburg High School for 45 years.   The proposed consolidation will increase Harrisonburg High School's student population to 164 students - 92% white.

B.   Assign grades 6-8 of Manifest Elementary (K-8 - 114 students - 99% white) to Harrisonburg Elementary.   The reassigned students are 48 in number, one of whom is black. Manifest Elementary student population would be reduced, K-5 - 66 students - 100% white.

The Board felt that it cannot finance the continued operation of these two small schools when the education of these students could be accomplished far more economically with greater educational opportunities to the students by assigning them to larger schools within a reasonable busing

distance.   The proposed plan is expected to achieve for the Cathahoula Parish school system an annual savings of $341,650.00.

The Board filed a motion that the court issue an order authorizing the Board to consolidate schools and change student assignment as described above.

The United States, in its response to the Board's motion, made no objection to the proposed assignment of Enterprise High School students to Harrisonburg Elementary School and Harrisonburg High School as proposed by the Board. However, the United States pointed out that Jonesville and Harrisonburg are exactly the same distance from Manifest and that the purpose of desegregation would be better served by assigning the 48 grades 6-8 students to Jonesville Junior High School (350 students - 60% white) than to Harrisonburg Elementary (245 students - 90% white).  The Unites States made no comment about the 66 K-5 students remaining in Manifest Elementary School.

On May 23, 1994, "Save Our Schools" (S.O.S.), an unincorporated association composed of major residents and registered voters and taxpayers of Catahoula Parish, filed a petition of intervention under the provision of Rules 24(a) and (b) under the Federal Rules of Civil Procedure praying for injunctive relief against the Board restraining and prohibiting the Board from executing the reassignment plan.

Both the Board and the United States opposed the intervention on the grounds that S.O.S. has shown no qualifications to intervene under Rule 24(a) or 24(b).

### CONCLUSIONS OF LAW

According to the uncontradicted testimony of Superintendent Keith Guice, this plan has been under study and consideration by the Board for over two years prior to its adoption on February 1, 1994. This testimony is substantiated by Exhibits A through F attached to the Board's motion for authorization to change student attendance zones. An effective opposition to the Board's plans would have required intense and detailed studies and preparation to challenge the Board's motives in adopting this plan. This is a desegregation suit. The Board's plan calls for the reassignment of students. The intervenor's reply that they have been segregated for many years and therefore they should remain segregated, was at the cost of their children attending a high school (Enterprise) having a student body of 28 children - 7 children in each grade. The schools are to reopen in the middle or latter part of August 1994. The School Board requires time in preparation for the new school year and must know whether they will or will not be allowed to carry out their proposed reassignment plan. Although the resolution was passed on February 1, 1994, the application for injunctive relief was not filed until May 23, 1994 and the

3

hearing was not had until June 28, 1994.  In short, the filing comes too late and we shall dismiss it.

We are not, in a desegregation issue of this character, limited to the consideration of the alternatives presented by the Board.  It is our duty to consider the assignment of students as it affects the school system as a whole and  promote or choose the available alternatives, that promote the objectives of desegregation.  Columbus Board of Education v. Penick, 443 U.S. 449, 459 (1979); Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 21 (1971); Davis and United States v. East Baton Rouge Parish School Board, 721 F.2d 1425, 1436 (5th Cir. 1983); Valley and United States v. Rapides Parish Board of Education, 646 F.2d 925, 938 (5th Cir. 1981) (Valley I), cert. denied, 455 U.S. 939 (1982). Therefore, we have considered alternatives not named by the Board.  Jonesville Junior High School is a viable alternative to which Manifest 6-8 students can be sent.  Since the busing factors from Manifest and the two alternatives, Harrisonburg Elementary and Jonesville Junior High are equal, the deciding factor should be the desegregative effect of the assignment of these students to Harrisonburg Elementary as opposed to Jonesville Junior High.  In a school system with a history of segregation, there is a presumption against the legitimacy of one race schools.  When a plan is adopted and schools substantially disproportionate in their composition remain,

4

there is a presumption that conversion to a unitary system is incomplete; especially, where desegregative alternatives exist.  Swann, 402 U.S. at 26; Davis, 721 F.2d at 1434; Lemon and United States v. Bossier Parish School Board, 556 F.2d 985, 987 (5th Cir. 1978).  It is well-settled case law that the use of neighborhood attendance zones to desegregate is acceptable only if it disestablishes rather than reimposes or perpetuates the dual system or as here vestiges thereof. Swann, 402 U.S. at 28.  Therefore, reassigning these students to Jonesville Junior High, which is 60% white, will be much more effective from a desegregation point of view than assigning them to Harrisonburg Elementary which is already 90% white.  For this reason we agree with the United States that these students should be assigned to Jonesville Junior High rather than to Harrisonburg Elementary.

We also agree with the Board and the United States that the students of Enterprise High School should be reassigned to Harrisonburg Elementary School and Harrisonburg High School as proposed by the Board.  There are no other viable alternatives.

Manifest grades 9-12 students have attended Harrisonburg High School since 1945.  We agree with the opinion of Superintendent Guice that the transfer of these students to Block High School in Jonesville would seriously reduce the educational effectiveness of Harrisonburg High

School.  They should continue to attend school as they have in the past.

Alexandria, Louisiana, this __7th__ day of July, 1994.


UNITED STATES DISTRICT JUDGE


COPY SENT
DATE 2-11-94
BY _____
TO: _____
Douglas / Marshall
Reno
Johnson
Hammonds
Guice
Wright

6