IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 69-14430** |
| ) | |
| ) | **Judge Robert James** |
| CATAHOULA PARISH SCHOOL BOARD, *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**JOINT PROPOSED PLAN OF WORK**

In response to the Court's April 2, 2019 Order [ECF 47], the United States of America ("United States") and the Catahoula Parish School Board ("Board")(collectively "the Parties") jointly submit this Plan of Work "directed to the proposition that unitary status is possible in Catahoula Parish and outlining the steps intended to carry forward satisfaction of the Green factors." (ECF 47).

**I.      Procedural History**

On July 29, 1969, this Court ordered the Board to effectuate a desegregation plan designed to disestablish the dual school system that existed in the Catahoula Parish School District, and permanently enjoined the Board from discriminating on the basis of race or color in the operation of the school system.  The order, amended on August 31, 1970, established ten schools.

Between July 7, 1994, and May 25, 2019, the Court authorized the Board to close five schools and assign the students zoned for those schools to the remaining schools.  The District now operates five schools: Central High (K-12), Harrisonburg High (K-12), Sicily Island (K-12), Jonesville Elementary (K-5), and Block High (6-12).  On July 8, 2019, this Court granted the

Board unitary status in the area of transportation, terminating the injunction as it related to transportation. Five *Green* factors remain: (1) student assignment; (2) faculty hiring and assignment; (3) staff assignment; (4) extracurricular activities; and (5) facilities. *Green v. Sch. Bd. of New Kent County*, 391 U.S. 430, 435 (1968).

## II.   STIPULATED PLAN OF WORK

The United States has requested additional time to monitor the Board relative to the remaining *Green* factors. While the Board maintains that it has eliminated the remaining vestiges of the prior dual school system to the extent practicable, it has agreed, in the spirit of good faith cooperation, to the United States' request as detailed below.

### A.   Student Assignment

The United States has expressed a desire to monitor student assignment, in part due to the recent closure of Jonesville Junior High School and the reconfiguration of grade structures at Jonesville Elementary and Block High Schools, effective beginning the 2019-2020 school year, to ensure that there is no adverse effect on desegregation.[1] Although the Board does not admit or agree that the closure of Jonesville Junior High will have an adverse effect on desegregation, it has agreed, in the spirit of good faith cooperation, to the United States' request for additional monitoring.

### B.   Faculty and Staff Assignment

The United States has expressed a desire to continue monitoring faculty and staff hiring and assignment, in part due to the reassignment of faculty and staff caused by the recent closure of Jonesville Junior High School. While the Board maintains it has exhibited a sustained good faith effort to recruit minority teacher and administrators so as to remedy the effects of any past

---

[1] *See* Order approving Closure of Jonesville Junior High School, Record Document 50.

discriminatory practices, it has agreed, in the spirit of good faith cooperation, to take the following steps to address the United States' concerns.

By September 10, 2019, the Board shall provide the United States with a report which contains the following information: (1) the number of administrators, teachers and staff assigned to each of the District's five schools and District office, disaggregated by race and certification status; and (2) the number of administrator, teacher and staff vacancies open between January 1, 2019 and September 1, 2019, disaggregated by position title and school; how each vacancy was advertised; the number of persons who applied for each opening, disaggregated by race and certification status; the number of persons interviewed for each vacancy, disaggregated by race and certification status; and the race and certification status of the person selected for each position.

C. **Extracurricular Activities**

The United States has expressed a desire to continue monitoring extracurricular activities, in part due to the reassignment of students resulting from the recent closure of Jonesville Junior High School. While the Board maintains that it provides all students an opportunity to participate in extracurricular activities on a non-discriminatory basis, it has agreed, in the spirit of good faith cooperation, to provide to the United States by October 15, 2019, a report that identifies each extracurricular activity at each school for the 2018-2019 and 2019-2020 school years, as of October 1, 2019, which report shall include the number of students by race and grade level participating in each extracurricular activity, a description of the selection process, and a description of how students were informed of the option to participate in the activity.[2]

---

[2] The Board has previously provided to the United States a report on extracurricular activities that included such information for the 2015-16, 2016-17, and 2017-18 school years.

### D. Facilities

The United States has expressed a desire to view and evaluate the recent facility repairs, upgrades, and/or renovations that have occurred in the previous six months. The Parties have agreed that the United States will conduct a site visit of Catahoula Parish schools to observe the Board's facility renovations on September 9-10, 2019. The United States has indicated that the site visit will include outreach to the Catahoula Parish community. Within forty-five (45) days of the site visit, the United States shall notify the Board if it has any objections to the Board seeking unitary status in the area of facilities.

## III. MONITORING AND REPORTING

### A. Reports

The Board shall file with the Court and provide to the United States its October 15th Annual Report, which shall include (1) faculty vacancy and replacement data; (2) faculty and staff assignment data as of October 1, 2019; (3) student enrollment data in each of the District's five schools, disaggregated by grade and race; and (4) student transfer data for the 2019-2020 school year, consistent with the Board's past annual filings.

By March 15, 2020, the Board shall provide to the United States an updated report regarding faculty and staff assignment, and student enrollment in each of the District's five schools, disaggregated by grade and race.

Finally, the Parties agree that the Board shall make additional data regarding student and faculty/staff assignment available to the United States upon request.

### B. Objections

If the United States has any objections to the Board's implementation of this Plan of Work after receiving the Faculty and Staff Report, Extracurricular Activities Report, October Report, or March Report, it shall notify the Board in writing of those objections within forty-five

(45) calendar days of receipt of such report. The Parties shall attempt to amicably resolve their differences. If those objections cannot be amicably resolved, either Party may present the issues to the Court for resolution.

## IV. FINAL TERMINATION

The parties have agreed that, upon demonstration of successful implementation of these provisions with respect to a particular *Green* factor, the Board may incrementally move for a declaration of unitary status on such factor. The Parties have agreed to confer, at a minimum, on or before December 1, 2019, and again on or before May 1, 2020, to discuss the status of this Plan of Work and the Board's eligibility to seek unitary status in whole or in part.

Finally, the Parties have agreed that, on any *Green* factor not incrementally dismissed, the Board may move for a declaration of final unitary status on the remaining areas no sooner than sixty (60) days after the submission of its March 15, 2020 report to the United States.

Dated: August 30, 2019

                Respectfully submitted,

**For Plaintiffs:**

| | |
|---|---|
| DAVID C. JOSEPH | ERIC DREIBAND |
| United States Attorney | Assistant Attorney General |
| Western District of Louisiana | Civil Rights Division |
| | |
| */s/ Katherine Vincent* | SHAHEENA SIMONS, Chief |
| KATHERINE W. VINCENT (#18717) | FRANZ R. MARSHALL, Deputy Chief |
| Assistant United States Attorney | Educational Opportunities Section |
| 800 Lafayette Street, Suite 2200 | |
| Lafayette, LA 70501-6832 | */s/Colleen Phillips* |
| (337) 262-6618 | COLLEEN PHILLIPS, Trial Attorney |
| Katherine.Vincent@usdoj.gov | U.S. Department of Justice |
| | Educational Opportunities Section |
| | Civil Rights Division |
| | 150 M Street, NE / 10-218 |
| | Washington, D.C. 20530 |
| | (202) 307-6548 |
| | Colleen.Phillips@usdoj.gov |

**For Defendant:**
HAMMONDS, SILLS, ADKINS &
    GUICE, LLP
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana 70808
Telephone: (225) 923-3462
Facsimile: (225) 923-0315

*/s/ Robert L. Hammonds*
ROBERT L. HAMMONDS
Bar Roll No. 6484
PAMELA WESCOVICH DILL
Bar Roll No. 31703
JOHN R. BLANCHARD
Bar Roll No. 37036