UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | CIVIL ACTION NO. 69-14430 (LEAD) |
| *Plaintiff* | * | CIVIL ACTION NO. 19-01094 (MEMBER) |
| | * | |
| | * | |
| **VERSUS** | * | JUDGE ROBERT G. JAMES |
| | * | |
| **CATAHOULA PARISH SCHOOL** | * | |
| **BOARD,** *et al.*, | * | |
| *Defendants* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**RESPONSE OF CATAHOULA PARISH SCHOOL BOARD
TO SMITH LETTER**

On or around September 12, 2019, Ms. Jill Lossin Smith, who appears to be proceeding *pro se*, submitted a letter with the Court challenging the Catahoula Parish School Board's denial of a health/medical transfer for her minor child E.S.[1] Ms. Smith has essentially asserted three (3) arguments: (1) that her claims have nothing to do with desegregation; (2) that Block High School cannot accommodate E.S.; and, (3) that she satisfied the requirements for a medical transfer. The Board respectfully submits that, as explained below, Ms. Smith lacks standing to challenge the Board's implementation of this Court's orders and, even if she did have standing, Ms. Smith's arguments are meritless and should be denied. Accordingly, the Board respectfully submits that Ms. Smith's challenge and the accompanying claims included in the removed state court petition should be dismissed with prejudice.

**I.    Ms. Smith Lacks Standing**

As an initial matter, Ms. Smith's position, at its core, is a challenge to the Board's implementation of this Court's remedial measures. While Ms. Smith claims her challenge is not about

---

[1] See, Smith Letter, Record Document 74 (filed under seal).

desegregation, it directly implicates the Board's obligation to comply with this Court's 1993 Order that sets forth transfer requirements.[2] However, in order for parents to participate in desegregation cases (where they are not a party), they must have an interest in the desegregation of the school system.[3] In other words, a parent's interest must be connected to the ultimate goal in every desegregation case: eliminating the vestiges of the prior *de jure* segregated system to the extent practicable.

Here, Ms. Smith's concern is that she wants her minor child E.S. to be allowed to transfer into another school of her choosing. She simply is challenging the Board's decision that the transfer request was not sufficient to justify granting a health/medical transfer, which is, to be specific, an exception to the in-zone residency requirement for assignment as dictated by the desegregation orders. Ms. Smith is somewhat correct in that what she desires is not connected to remedying the prior *de jure* segregation. Because of this, however, she lacks standing to challenge the Board's implementation of the transfer provisions and the Court should dismiss Ms. Smith's challenge with prejudice for that reason alone.

## II.     Ms. Smith's Arguments Lack Merit

In the alternative, should this Court determine that Ms. Smith has standing to pursue a challenge to the Board's implementation of the transfer provision, the Board would submit that her claims lack merit and should be denied.

### 1.     This Matter Concerns Desegregation

Ms. Smith's first argument is that her claim regarding E.S.'s transfer is not related to desegregation and, thus, should not be considered within this case.[4] However, as noted above, the

---

[2] *See* Order Record Document 1-12; Transfer Policy, Record Document 1-11 at pp. 11-12.

[3] *See U.S. v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995) (citing *Pate v. Dade County Sch. Bd.*, 588 F.2d 501, 503 (5th Cir. 1979); *U.S. v. Perry County Bd. of Ed.*, 567 F.2d 277, 279 (5th Cir. 1978)). The Board acknowledges that these cases concern interventions but submits that they provide appropriate guidance here.

[4] *See* Smith Letter, Rec. Doc. 74 at p. 1.

Board is required to implement this Court's 1993 Order that contains specific requirements for medical transfers. These transfer provisions constitute a significant remedial measure intended to ensure proper implementation of the student attendance zones, which are the foundation of the desegregation plan, by providing limited valid exceptions to the requirement that students attend school in the zone in which they reside. Therefore, the transfer provisions are, in fact, intimately connected to this desegregation case. As such, Ms. Smith's challenge directly concerns desegregation.

2.  **Block High School Can Accommodate E.S.**

Ms. Smith's second argument appears to be that Block High School cannot accommodate E.S.'s medical needs and, therefore, that the decision to deny the transfer was improper. The Board respectfully submits that the faculty and staff at Block High School are able and willing to met E.S.'s needs, rendering these arguments meritless.

Contrary to Ms. Smith's allegation that "[t]here was no attempt to resolve the needs of" E.S.'s medical condition,[5] faculty and staff at the Board's schools are provided training related to the health and/or medical needs of certain students. Specific to Block High School, faculty and staff at that school were provided in-service training from the District's nurse that included training on anaphylaxis, asthma, diabetes, seizures, and students that had other health concerns.[6] Aware that Ms. Smith was concerned about E.S. attending Block High School, the Administration directed and the District's nurse focused during that training on E.S.'s medical needs, including training the faculty and staff on how to apply EpiPens.[7] The nurse utilized E.S.'s individualized healthcare plan as part of the training to emphasize

---

[5] Smith Letter, Rec. Doc 74 at p. 3.

[6] *See* Training Documents, Exhibit A.

[7] *See Id.* at p. 4.

her needs.[8]  To note, E.S's plan allows her to carry necessary medication at all times.  Additionally, a letter was sent home to all parents informing them that Block High School is pecan/peanut/nut and shrimp free because of student's allergies.[9]  Although E.S. never showed up for classes at Block High School, the Board ensured that faculty and staff at Block High School were prepared to meet her needs.

Relatedly, Ms. Smith claims that there is "no ambulance service" near Block High School.[10]  However, prior to the beginning of the 2019-2020 school year, and again because of Ms. Smith's concerns, Superintendent Ronnie Lofton personally verified that there is an ambulance in Jonesville, Louisiana, stationed approximately one (1) mile from Block High School.  Importantly, Ms. Smith admits that she met with Superintendent Lofton and that he informed her that E.S.'s needs would be met at Block High School.[11]

The Board accommodates the various medical needs of over two (2) dozen students at Block High School.[12]  E.S.'s needs would have been equally met if she attended Block High School.  Accordingly, the Board respectfully submits that the Court should reject this argument.

### 3. Transfer Requirements Not Met

Ms. Smith argues that she satisfies the transfer requirements of the 1993 Order.  The Board submits that these requirements were not met and denying the transfer was appropriate and not an abuse of the decision-making process.  The transfer policy approved by this Court provided in pertinent part:

---

[8] *See* E.S. Individualized Healthcare Plan, Exhibit B (filed under seal).  The Board has contemporaneously filed a Motion to Seal Exhibit B to protect E.S.'s privacy.

[9] *See* Exhibit A at p. 3.

[10] *See* Smith Letter, Rec. Doc. 74 at p. 2.

[11] *Id.*

[12] *See* Exhibit A at p. 2.  To protect these students' privacy, their full names have been redacted in accordance with Federal Rule of Civil Procedure 5.2 and Local Rule 5.7.12.

> Health (Medical)
> A student transfer to a school outside the assigned attendance zone for medical reasons must be approved under the following guidelines:
>
>> (1) Written support by a licensed medical doctor describing medical problem or conditions and why such problem or condition necessitates a transfer.
>>
>> (2) Transfer to another school and the school of choice must be justified by and connected with the medical condition, need for treatment, proximity to the office of the doctor who currently treats the student, proximity to hospital or medical center and the existing medical condition.[13]

Ms. Smith appears to be arguing that she satisfied these requirements solely because she had letters from doctors that suggested a transfer be given.

Before the start of the 2019-2020 school year, the Board convened a Student Transfer Committee (the "Committee") to review all transfer applications. At the time of the Smith's transfer request, E.S. resided within the Jonesville attendance zone and requested a transfer to Harrisonburg High School. Upon review of E.S.'s application, the Committee determined that E.S. did not satisfy the above requirements for a medical transfer. The Committee determined that E.S.'s medical needs could be met at Block High School, that the same or similar services were offered at both schools, that E.S. would be closer to her doctor at Block High School, and that E.S. has a health plan that authorizes her to carry necessary medication at all times.

Simply put, the Committee determined that a transfer to another school would not be justified when the zoned school is more than capable of meeting the medical needs of a student. And, while certainly relevant to a student's medical needs, a transfer is not justified solely because one or more doctors suggest that one should be granted. Of significance to this desegregation case, it must be noted that E.S. is a white student who was zoned for a majority black school but sought a transfer to a majority white school. Without a valid reason for an exception to the student attendance zones,

---

[13] Student Enrollment and Transfer Policy, Record Document 1-11 at pp. 11-12.

granting a transfer under these circumstances would be contrary to the goals of desegregation in this case. It is the Board's responsibility to implement, in good faith, the transfer provisions of this Court's orders and that is what was done here. Accordingly, the Board respectfully submits that the Court should reject this argument as well.

### 4. E.S. not Attending District School

The Board would note as a final matter that E.S. is no longer attending any District school. While the Smiths initiated this issue in their state court law suit while living in the Jonesville attendance zone, after this Court granted the Board's request to remove that suit into this case, the Smiths subsequently moved into a rental home within the Harrisonburg attendance zone - the zone to which the transfer was requested. On or around August 22, 2019, the Board's administration confirmed that the Smiths had legitimately moved into such home. Accordingly, E.S. was allowed to attend Harrisonburg High School because she resided within the attendance zone as approved by this Court.

However, Ms. Smith's letter indicates that E.S. is now or will shortly be home schooled allegedly because E.S. had a negative reaction to the new home.[14] While not clear from her letter it appears that, as a result of E.S.'s "allergies/asthma" allegedly taking "a turn for the worst," the Smiths returned to reside in their Jonesville home within the Block High School attendance zone. Even though Ms. Smith has been assured that the faculty and staff at Block High School are fully prepared to accommodate E.S's medical needs(especially given the existence of her Individualized Healthcare Plan), Ms. Smith has chosen to keep E.S. out of Block High School. Thus, the Board would submit that this issue may be moot because E.S. no longer attends any of the District's schools.

---

[14] Smith Letter, Rec. Doc. 74 at p. 3.

### III. Conclusion

For the foregoing reasons, the Catahoula Parish School Board respectfully submits that Ms. Jill Lossin Smith lacks standing to litigate in this case because her interests do not concern the furtherance of desegregation in the District but do concern only whether E.S. attends a particular school of choice. Alternatively, the Board submits that Ms. Smith's arguments lack merit because the Board implemented the Court approved transfer provisions appropriately, the Transfer Committee did not abuse its discretion in making the decision to deny the transfer for valid reasons, and Block High School can and would provide necessary services to E.S. Accordingly, the Board respectfully submits that Ms. Smith's challenge and the claims included in the removed state court petition should be dismissed with prejudice.

**Respectfully submitted,** this the 9th day of October 2019.

**CATAHOULA PARISH SCHOOL BOARD**

**HAMMONDS, SILLS, ADKINS & GUICE, LLP**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana 70808
Telephone: (225) 923-3462
Facsimile: (225) 923-0315

  *s/ John Richard Blanchard*
**ROBERT L. HAMMONDS**
Bar Roll No. 6484
**PAMELA WESCOVICH DILL**
Bar Roll No. 31703
**JOHN RICHARD BLANCHARD**
Bar Roll No. 37036

## **CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the above and foregoing RESPONSE was filed electronically with the Clerk of Court by use of the CM/ECF system, which will send a notice of electronic filing to counsel registered with the Court for receipt of pleadings by e-mail.

I do hereby further certify that, on the date stated below, a true and correcy copy of the above foregoing RESPONSE and accompanying Exhibits, in print format, was forwarded via U.S. mail to Ms. Jill Lossin Smith at the following address which was listed on her letter to the Court:

Jill Lossin Smith
21835 Hwy 124
Jonesville, Louisiana 71343

**BATON ROUGE, LOUSIANA**, this the 9th day of October 2019.

                                              *s/ John Richard Blanchard*
                                              **JOHN RICHARD BLANCHARD**
                                              Bar Roll No. 37036